# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00460-COA

**BILLY RAY HARRIS**                                                         **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2023 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TAMARRA AKIEA BOWIE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     In 2001, Billy Ray Harris was convicted of depraved heart murder pursuant to Mississippi Code Annotated section 97-3-19(1)(b) (Supp. 1998).  At the time, there were no "degrees" of murder in Mississippi law but, rather, classifications such as deliberate design murder and depraved heart murder.[1]  *Id.* § 97-3-19(1).  The law carried the same punishment for both: life in prison.  *Id.* § 97-3-21 (Rev. 1994).  The trial court sentenced Harris to life imprisonment without parole eligibility.  In 2022, the Mississippi Supreme Court vacated Harris's life-without-parole sentence and remanded to the trial court for re-sentencing.  On

---

[1] In other words, Mississippi's grades of homicide were not categorized as first- and second-degree murder.

remand, Harris asked the trial court to sentence him to "life imprisonment with the possibility of parole." The trial court sentenced Harris to "life imprisonment." Harris appeals. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     On November 7, 1999, Harris was at the Windy City Club in Madison County. A fistfight started in the club between Harris and the victim. The fight continued outside, and Harris's brother joined in the melee. Next, shots were heard, and the victim was found in a ditch. The victim died from blunt force trauma. Harris admitted to authorities that he fought with the victim and was "on top of the boy" in the ditch and had been "kicking him." Harris was tried by a jury and found guilty of depraved heart murder.

¶3.     At the time of Harris's conviction, deliberate design murder and depraved heart murder had "coalesced" (prior to degrees of murder being created by the Mississippi Legislature).[2] *See White v. State*, 964 So. 2d 1181, 1187 (¶14) (Miss. Ct. App. 2007) (stating

---

[2] This state did not adopt the concept of first- and second-degree murder until 2013. The statute was modified that year to reflect the following pertinent additions:

(1)     The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
(a)     When done with deliberate design to effect the death of the person killed, or of any human being, shall be **first-degree murder**;
(b)     When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be **second-degree murder**. . . .

2

that "Mississippi case law has established that deliberate design murder and depraved heart murder have coalesced into one" (citing *Chatman v. State*, 952 So. 2d 945, 948 (¶6) (Miss. Ct. App. 2006) ("[D]epraved heart murder involves an act so reckless that malice or deliberate design is implied."))); *see also Catchings v. State*, 684 So. 2d 591, 599 (Miss. 1996) (acknowledging that "[o]ur cases have for all practical purposes coalesced" deliberate design and depraved heart murder (citing *Mallett v. State*, 606 So. 2d 1092, 1095 (Miss. 1992))). The punishment for a conviction of either was life imprisonment. The trial judge at the time of Harris's conviction erroneously sentenced Harris to life imprisonment without parole eligibility.

¶4. In 2003, the supreme court granted a motion for rehearing in Harris's direct appeal. The court withdrew its original opinion and substituted the presently published opinion, *Harris v. State*, 861 So. 2d 1003 (Miss. 2003). The supreme court affirmed Harris's conviction. The sentence was not raised as an issue on direct appeal.

¶5. Harris challenged his sentence in a motion for leave to proceed in the trial court. On November 1, 2022, the supreme court vacated Harris's sentence and remanded the case to the trial court for re-sentencing. Order, *Harris v. State*, No. 2022-M-00417 (Miss. Nov. 1, 2022). On January 31, 2023, the trial court held a re-sentencing hearing for Harris. The resulting order sentenced Harris "to serve a term of life imprisonment . . . to run

---

2013 Miss. Laws ch. 555, § 1 (S.B. 2377) (emphasis added); Miss. Code Ann. § 97-3-19 (Supp. 2013).

consecutively to any and all other sentences."[3]  On February 7, 2023, Harris filed a motion

for reconsideration and relief from the judgment.  The trial court denied that motion on April

14, 2023.  On April 17, 2023, Harris filed a motion to proceed in forma pauperis and

appealed his conviction, sentencing, and the denial of reconsideration.  His argument was

based upon his ineligibility for parole, asserting such exceeded the statutory maximum and

violated his constitutional rights.

## STANDARD OF REVIEW

¶6.    This Court "appl[ies] a highly deferential standard of review for sentencing matters,

leaving the imposition of the sentence to the trial judge's discretion." *Perryman v. State*, 120

So. 3d 1048, 1052 (¶10) (Miss. Ct. App. 2013) (citing *Reynolds v. State*, 585 So. 2d 753, 756

(Miss. 1991)).  "Generally, if the sentence does not exceed the statutory maximum, it will not

be disturbed on appeal."  *Id.* (citing *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992)).

However, "[w]here questions of law are raised[,] the applicable standard of review is de

novo."  *Cozart v. State*, 226 So. 3d 574, 577 (¶9) (Miss. 2017) (quoting *Brown v. State*, 731

So. 2d 595, 598 (¶6) (Miss. 1999)).

## DISCUSSION

¶7.    Harris largely argues that his lack of parole eligibility exceeds the statutory maximum

and violates his constitutional rights.  However, "[p]risoners have no constitutionally

---

[3] The sentencing order was corrected on February 2, 2023, to reflect the correct name of the defense attorney representing Harris.

4

recognized liberty interest in parole." *Peterson v. State*, 119 So. 3d 1068, 1070 (¶6) (Miss. Ct. App. 2012) (quoting *Hopson v. Miss. State Parole Bd.*, 976 So. 2d 973, 975 (¶6) (Miss. Ct. App. 2008)). Because parole is not recognized as a constitutionally protected right, we decline to address the due process argument as a whole. It should be noted that at the time Harris was sentenced, the mandatory sentence required "imprisonment for life." Miss. Code Ann. § 97-3-21 (Rev. 1994). On re-sentencing, that is exactly what Harris received. His sentence for the crime for which he was convicted was entirely in compliance with Mississippi law at the time he committed the crime.

¶8.     Our caselaw interpreted the sentencing statute for murder, section 97-3-21, to mean that "[a] defendant convicted of murder is to be sentenced to life imprisonment." *Booker v. Bailey*, 839 So. 2d 611, 612 (¶6) (Miss. Ct. App. 2003) (citing Miss. Code Ann. § 97-3-21 (Rev. 2000)). One of Mississippi's parole eligibility statutes provides that "**[n]o person** sentenced for murder in the first degree, whose crime was committed on or after June 30, 1995, or **murder in the second degree**, as defined in Section 97-3-19, **shall be eligible for parole**[.]" Miss. Code Ann. § 47-7-3(1)(d) (Rev. 2023) (emphasis added). Harris argues that the statutory maximum punishment for his crime, life imprisonment, was exceeded by not allowing him a chance at parole. He adds that section 97-3-19 does not preclude parole eligibility which therefore proves that he should be eligible for parole, arguing section 47-7-3 would cause his "life sentence" to exceed the parameters of the statute.

¶9.     However, "[t]his provision must be read in conjunction with others that detail which

classes of crimes permit the possibility of parole following conviction." *Booker*, 839 So. 2d at 612 (¶6). When read in conjunction with one another, the two statutes do not cancel out each other. Life imprisonment was the mandatory sentence for a person convicted of murder. The lack of eligibility for parole set out in section 47-7-3 is merely an additional condition placed on that sentence. Because this Court must read section 97-3-21 and section 47-7-3 "in conjunction" with one another, we see no abuse of discretion in Harris's sentence imposed by the trial court. Just because the parole statute, section 47-7-3, and not the sentencing statute, section 97-3-21, makes Harris ineligible for parole, it does not mean his sentence is illegal. *See Booker*, 839 So. 2d at 612 (¶6).

## CONCLUSION

¶10. After thoroughly reviewing the record and keeping in mind the highly deferential standard we use when reviewing a trial court's sentence, we find no error and affirm.

¶11. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY AND SMITH, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**

6